UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

JOHN AYERS,

  Plaintiff,

-VS-

NEWREZ LLC, d/b/a SHELLPOINT MORTGAGE SERVICING,

  Defendant,

_____/

CASE NO.: 2:21-cv-00089-RWS-JCF

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, John Ayers (hereinafter "Plaintiff"), by and through the undersigned counsel, sues Defendant, NewRez LLC d/b/a Shellpoint Mortgage Servicing (hereinafter "Shellpoint"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.*

### PRELIMINARY STATEMENT

1. This is an action for actual damages, statutory damages, punitive damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act 15 U.S.C. § 1681 *et seq.* ("FCRA") and the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA").

2. Today in America there are three major consumer reporting agencies, Equifax Information Services, LLC ("Equifax"), TransUnion, LLC ("TransUnion") and Experian Information Solutions, LLC ("Experian") (collectively "CRAs").

3. Consumer reporting agencies that create consumer reports, like Equifax, Experian and TransUnion are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities like Shellpoint, particularly where a consumer makes a dispute about information reported.

4. When a consumer like Plaintiff disputes information through the CRAs, those disputes are transmitted to the party furnishing the information, here Shellpoint. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

5. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

## JURISDICTION

6. The jurisdiction for this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

7. Venue is proper in this District as Plaintiff is a resident in this District, the violations described in this Complaint occurred in this District, and the Defendants transact business within this District.

8. The Plaintiff is a natural person and resident of the State of Georgia, residing in White County, Georgia.

9. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. §1692a(3).

10. Upon information and belief, Shellpoint, is a limited liability company with its principal place of business located at 55 Beattie Place, Suite 110, Greenville, SC 29601, authorized to do business in the State of Georgia.

11. Shellpoint is a company collecting an alleged obligation which arises out of personal, family or household transactions.

12. Shellpoint is a company that was attempting to collect an alleged consumer debt from Plaintiff.

13. Plaintiff does not have a relationship with Shellpoint.

14. Shellpoint never provided any services to Plaintiff and was strictly attempting to collect a false debt from the Plaintiff.

15. Shellpoint is a "debt collector" as defined in 15 U.S.C. §1692a(6).

16. The alleged debt in question in this matter is a consumer debt 15 U.S.C. §1692a(5).

## FACTUAL ALLEGATIONS

17. In or around May, 1999, Plaintiff purchased a mobile home (the "property") and entered into a mortgage (Account No.: ****9570) for the mobile home ("alleged debt"), which was serviced by Green Tree Financial Servicing ("Green Tree").

18. Plaintiff rented the mobile home and used the rental income to pay the alleged debt and other expenses related to the property.

19. In or around October, 2006, Plaintiff began to struggle to pay his debts and filed for bankruptcy in the United States Bankruptcy Court, Northern District of Georgia, Case No.: 06-21544-REB. As part of the bankruptcy, Plaintiff surrendered the property to Green Tree, as the property was in default.

20. At some point Green Tree and the tenants of the property came to an agreement allowing the tenants to continue to live at the property and pay Green Tree directly.

21. In or around January, 2007, the alleged debt was discharged in Bankruptcy Case No.:_06-21544-REB.

22. On or about October 31, 2020, Plaintiff began the process of purchasing a new home and was initially pre-approved for a mortgage to purchase the new home through non-party Neighborhood Mortgage, Inc. ("Neighborhood Mortgage").

23. Shortly after being notified of the pre-approval, Neighborhood Mortgage contacted Plaintiff to advise there was concern about a mortgage that was appearing on Plaintiff's credit reports as "Shellpoint Mortgage Svc Account" ("new alleged debt").

24. All three CRAs were showing late payments on the "Shellpoint Mortgage Svc Account" as of July, 2020.

25. At first, Plaintiff was unsure what this mortgage was, however, after review it became clear that the new alleged debt was for the same mortgage of the property surrendered during the bankruptcy which was discharged back in 2007.

26. After speaking with Neighborhood Mortgage and explaining the situation, Neighborhood Mortgage requested copies of the bankruptcy filings, and also advised Plaintiff would need to advise Shellpoint of the Banktrupcty.  On or about November 2, 2020, Plaintiff emailed a copy of the bankruptcy filings to Shellpoint.

27. On or about November 3, 2020, Plaintiff called Shellpoint to dispute the new alleged debt being reported on his credit reports. During this telephone call, Shellpoint stated they had no record of a bankruptcy for the loan.

28. Plaintiff believed the issue would be resolved and moved forward with scheduling the closing on the new home for December 11, 2020.

29. On December 11, 2020, Plaintiff was notified that the closing would need to be rescheduled to another day, as further payment history was needed from Shellpoint.

30. After several telephone conferences with Shellpoint, Plaintiff was able to get a supervisor involved, who was able to locate the loan and bankruptcy discharge, apologized for the error on Shellpoint behalf and advised the error would be corrected and removed from Plaintiff's credit reports by December 16, 2020.

31. On or about December 3, 2020 and December 22, 2020, Plaintiff submitted online disputes with Equifax, disputing the new alleged debt being furnished by Shellpoint.

32. On or about January 12, 2021, Equifax responded to Plaintiff's disputes and advised Shellpoint had verified the new alleged debt as accurate and reporting correctly.

33. As a result of this conduct, action and inaction of Shellpoint, Plaintiff suffered damage by:

    i. Loss of credit;

    ii. Loss of the ability to purchase and benefit from credit;

    iii. Loss of a mortgage and the subject property;

    iv. Mental and emotional pain stemming from the anguish, humiliation.

34. All conditions precedent to the filing of this action have occurred.

## CAUSES OF ACTION

### COUNT I

**Violation of the FCRA by Defendant,
NewRez LLC d/b/a Shellpoint Mortgage Servicing**

35. Plaintiff re-alleges and incorporates paragraphs one (1) through thirty-four (34), including subparts, as if fully set forth herein.

36. Shellpoint violated 15 U.S.C. §1681s-2 by failing to conduct a proper investigation into the accuracy of the information being reported, even after they were made aware of its inaccuracy by Plaintiff.

37. Shellpoint's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C §1681n. In the alternative, Shellpoint was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

38. The Plaintiff is entitled to recover costs and attorney's fees from Shellpoint in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or §1681o.

**WHEREFORE**, the Plaintiff demands judgment and compensatory and punitive damages against NewRez LLC d/b/a Shellpoint Mortgage Servicing, jointly and severally; for his attorneys fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

## COUNT II

**Violation of the FDCPA by Defendant,
NewRez LLC d/b/a Shellpoint Mortgage Servicing**

39. Plaintiff re-alleges and incorporates paragraphs one (1) through thirty-four (34), including subparts, as if fully set forth herein.

40. At all times relevant to this action, Shellpoint was subject to and required to abide by 15 U.S.C. §1692 *et seq*.

41. Shellpoint violated 15 U.S.C. §§1692e(2)(a), 1692e(8) and 1692e(10) by falsely representing the character, amount, or legal status of a debt, and by communicating to any person credit information which is known, or which should be known, to be false, all in an attempt to collect a debt.

42. Shellpoint violated 15 U.S.C. §§1692c(b) by communicating with a third party in an attempt to collect a debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, NewRez LLC d/b/a Shellpoint Mortgage Servicing, for statutory damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Octavio "Tav" Gomez*
Octavio "Tav" Gomez
Georgia Bar No.: 617963
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile:  (813) 983-2889
tgomez@ForThePeople.com
jderry@ForThePeople.com
jkneeland@ForThePeople.com
*Attorney for Plaintiff*